# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TELUCCI,<br><br>    Plaintiff,<br><br>    v.<br><br>WITHROW, et al.,<br><br>    Defendants. | Case No. 1:16-cv-00025-JLT (PC)<br><br>**ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**<br><br>**(Doc. 1)** |

The state court has determined that Richard Telucci is a sexually violent predator, and ordered him confined at a state psychiatric facility indefinitely. Coalinga State Hospital, where Mr. Telucci is currently housed, does not provide the detainees access to the internet and prohibits sexually violent predators from possessing electronic devices capable of accessing the internet. In this action, Mr. Telucci claims the regulations requiring the state hospital to impose these restrictions, violated his rights under the First and Fourteenth Amendments; the Court disagrees and orders the complaint **DISMISSED**.

**I.    Screening Requirement**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case brought under 42 U.S.C. §1983] at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Requirements -- Fed. R. Civ. Pro 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations are accepted as true but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners (and detainees) are still construed liberally and are afforded the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief. *Johnson v. City of Shelby*, __ U.S. __, __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

## III. Summary of Plaintiff's Complaint

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH"). He is being held as a sexually violent predator according to California's Sexually Violent Predator Act ("SVPA"). Cal. Welf. & Instit. Code §§ 6600 et seq. Plaintiff names Richard Withrow, the Acting Director of the hospital and Brandon Price its Administrator.

In this action, Plaintiff attacks two regulations: 9 C.C.R. §§891 (which prohibits all

patients in the custody of the of a state hospitals from having any access to the internet) and 9 C.C.R. § 4350 (which prohibits all such patients from possessing any electronic devices with wireless capabilities, including but not limited to cell phones, PDAs, tablets, and videogame systems with internet capabilities as well as any electronics with external audio or video recording capabilities).  He claims that these regulations violate his rights under the Fourteenth Amendment to due process by subjecting him "to conditions of confinement that are excessively restrictive in relation to any legitimate non-punitive governmental interests" and impermissibly infringe on his right "to communicate with others, to create information and speech, to receive information and speech, and to send information and speech" under the First Amendment.  (Doc. 1, pp. 9-10.)   In particular he claims, the refusal to provide him internet access and to allow him to have a computer, deprives him of the ability to:  email and Skype with friends and family; to telephone friends and family without their incurring collect call fees; to receive telephone calls from friends and family when the four incoming telephones are in use; to talk privately with friends and family; to telephone patients on other CSH units; to research topics of interest over the internet; to obtain information regarding civil rights organizations over the internet; to send emails to attorneys, paralegals, and civil rights advocates; to research and purchase products over the internet; to receive news of current events from non-mainstream media sources; to seek employment and income from companies that permit individuals to work for them over the internet; to set up a Blog that reveals to others the unconstitutional conditions suffered by patients held pursuant to the SVPA; to transmit and receive faxes; to scan legal and personal material for effective management/organization and for ease of sharing such materials with attorneys, paralegals, civil rights organizations, family members, and friends; to meet new friends and acquaintances over the internet; to economically print documents; to record Plaintiff's own music; to receive television channels and movies that are only available over the internet; to privately communicate with government agencies over the internet; to receive software updates that are only available over the internet; to access Westlaw and/or LexisNexis for legal research; and to "overcome the substantial hardship of trying to effectively litigate, effectively communicate, effectively conduct research, and otherwise effectively function in the Information

3

Age without the basic tools to do so." (Doc. 1, pp. 7-9.)

For the reasons discussed in detail below, this action is **DISMISSED** without leave to amend because the defects in Plaintiff's pleadings are not curable via amendment. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

## IV.     Review of California's SVPA

To be determined to be an SVP, the detainee must have been convicted of a sexually violent offense and have a diagnosed mental disorder that makes it "likely that he ... will engage in sexually violent criminal behavior." Cal. Welf. & Instit. Code § 6606(a)(1). Sexually violent offenses include such acts as rape, spousal rape, aggravated sexual assault of a child, sodomy, lewd or lascivious acts involving children, oral copulation, continuous sexual abuse of a child and penetration by a foreign object or kidnaping or assault with the intent to commit one of these other crimes. Cal. Welf. & Instit. Code 6000(b). The sexually violent act must have been committed "by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person ..." *Id*. SVPs may be held for an indeterminate term but the continued need for detention must be reviewed annually. Cal. Welf. & Inst.Code § § 6604, 6605.

Though SVPs are not prisoners, the danger they pose to others cannot be ignored. "Sexually violent predators are involuntarily committed because their mental disease makes them dangerous to others. [Footnote] Neither the commitment nor the evaluation proceeding is something they themselves seek in order to obtain a cure. The state evaluates and commits to protect others from them." *Seaton v. Mayberg*, 610 F.3d 530, 540 (9th Cir.2010), footnote omitted. The SVPA "is aimed at protecting society from, and providing treatment for, that 'small but extremely dangerous group of sexually violent predators' who have diagnosable mental disorders identified while they are incarcerated for designated violent sex crimes, and who are determined to be unsafe and, if released, to represent a danger to others through acts of sexual violence." *Garcetti v. Superior Court*, 85 Cal.App.4th 1113, 1117 (Cal.App.2d, 2000).

As a SVP, Plaintiff is not entitled to full constitutional rights. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  However, he is entitled to substantive rights which include:  adequate

1  food, shelter, clothing, medical care, safety and freedom from unnecessary bodily restraint, as
2  well as "minimally adequate or reasonable training to ensure safety and freedom from undue
3  [physical] restraint." *Youngberg v. Romeo*, 457 U.S. 307, 315-16, 319 (1982).

4  Restrictions imposed on SVPs need not be the least intrusive or those that the court
5  agrees with as long as they advance a legitimate interest of the hospital. *Valdez v. Rosenbaum*,
6  302 F.3d 1039, 1046 (9th Cir.2002), citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ["such
7  considerations are peculiarly within the province and professional expertise of corrections
8  officials" as long as the determinations are not an exaggerated response to the considerations."]
9  Courts have determined that many restrictions on SVPs that are akin to those imposed on
10 prisoners, are appropriate due to safety concerns.  For example, SVPs may be required to wear
11 red jumpsuits to make them easier to see (*Marentez v. Baca*, 2012 WL 7018230, at *7-8 (C.D.
12 Cal. Oct. 9, 2012)), they may be precluded from having contact visits (*Munoz v. Kolender*, 208
13 F.Supp.2d 1125, 1144, 1147) and they may be housed in local jails (*Id.*)

14 **V.   Discussion**

15     **A.   <u>The complaint is barred by the statute of limitations</u>**

16 Section 1983 contains no specific statute of limitation so federal courts must apply the
17 forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927
18 (9th Cir. 2004); *Maldonado*, 370 F.3d at 954; *Fink*, 192 F.3d at 914.  As of January 1, 2003,
19 California's statute of limitations for personal injury actions is two years from the date of
20 incident/inception. Cal. Civ. Proc. Code § 335.1 (West 2007); *Jones*, 393 F.3d at 927;
21 *Maldonado*, 370 F.3d at 954-55.

22 In actions where the federal court borrows the state statute of limitation, the court should
23 also borrow all applicable provisions for tolling the limitations period found in state law.  *Jones*,
24 393 F.3d at 927.  Under California law, prisoners who at the time the cause of action accrued
25 were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal
26 conviction enjoy a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1
27 (West 2007).  Courts have extended this provision to claims asserted by a continuously confined
28 civil detainee who has acted in good faith to pursue his claims.  *See Jones*, 393 F.3d at 930.

1    The screening standard for failure to state a claim is the same as that applied under Fed. R.
2 Civ. P. 12(b)(6), *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012), and dismissal under
3 Fed. R. Civ. P. 12(b)(6) as barred by the statute of limitation is proper when the running of the
4 statute is apparent on the face of the complaint, *Von Saher v. Norton Simon Museum of Art at*
5 *Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

6    Though Plaintiff alleges that he has been detained at CSH "since 2013" (Doc. 1, p. 2) the
7 record of his civil detention shows that he has in fact been detained there since March 6, 2008.
8 The Court takes judicial notice of the record from the San Francisco Superior Court, Case Nos.
9 1901063 and 1925047 in which the San Francisco District Attorney filed a petition alleging that
10 Plaintiff qualified as a SVP.  *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not
11 subject to reasonable dispute in that it is either (1) generally known within the territorial
12 jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to
13 sources whose accuracy cannot reasonably be questioned."); *see also Bias v. Moynihan*, 508 F.3d
14 1212, 1225 (9th Cir. 2007) (The Court may take judicial "notice of proceedings in other courts,
15 both within and without the federal system, if those proceedings have a direct relation to matters
16 at issue." (internal quotation marks and citation omitted)).  Probable cause hearings were held on
17 May 24 and June 18, 2007, which resulted in findings of probable cause to believe that Plaintiff is
18 likely to engage in sexually violent predatory behavior upon his release from prison and ordered
19 his transported to CSH on March 6, 2008.

20    The Court also takes judicial notice that 9 U.S.C. § 891 became operative in July of 2003.
21 *See* Cal. Code Regs. title 9 § 891.  "Under federal law, a claim accrues when the plaintiff knows
22 or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370
23 F.3d 945, 955 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  Plaintiff is thus
24 charged with knowing or having had reason to know of possible injury to his rights by § 891 upon
25 his transfer to CSH in March of 2008.  Thus, the statute of limitation to bring a cause of action
26 against implementation of § 891 ran four years after his placement at CSH, i.e. in March of 2012.

27    The Court also takes judicial notice that 9 U.S.C. § 4350 was implemented in October
28 2009.  *See* Cal. Code Regs. title 9 § 4350.  The four-year statute of limitations (when coupled

1  with the two year tolling for Plaintiff's detainee status) lapsed in October 2013. Thus, when
2  Plaintiff filed this action on January 8, 2016, it was timely by years. Accordingly, this action is
3  barred by the applicable statute of limitations—a defect which is not curable by amendment, so
4  leave to amend need not be given. *Akhtar*, 698 F.3d at 1212-13.

### B. The Fourteenth Amendment controls Plaintiff's conditions of confinement claims

Claims of a detainee challenging the conditions of confinement arise under the substantive due process clause of the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004). States are required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)), via "'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Id.* (quoting *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)).

However, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a constitutional minimum for the rights of persons detained under a civil commitment scheme, *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012) (citing *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007), *vacated and remanded on other grounds by* 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991), *abrogated on other grounds by* 511 U.S. 825 (1994).

#### 1. Confinement Purposes

Under the Fourteenth Amendment, "punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless 'excessive in relation to the alternative purpose,' or 'are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). However, Plaintiff does not claim that §§ 891 and 4350 are intended to

7

1  punish.¹  To the contrary, he alleges that CSH's staff and representatives have responded to his
2  requests for relief from enforcement of §§ 891 and 4350 by stating that the regulations are
3  required due to safety and security concerns regarding: (1) patients accessing prohibited
4  materials; (2) patients having, obtaining, and/or distributing confidential information; and (3)
5  patients infiltrating the security system of the facility.  (Doc. 1, p. 3.)

6  Restrictions that have a legitimate, non-punitive government purpose and that are not
7  excessive in relation to that purpose, such §§ 891 and 4350, are permissible.  *Bell*, 441 U.S. at
8  535, 539; *Salerno*, 481 U.S. at 747; *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002).
9  Legitimate, non-punitive government interests include ensuring a detainee's presence at trial,
10  maintaining facility security, effective management of a detention facility, and ensuring detainee
11  safety.  *Bell,* 441 U.S. at 539-40); *Jones*, 393 F.3d at 932; *United States v. Gaitain-Ayala*, No. 07-
12  00268-01, 2009 WL 948342, at *5 (D. Haw. Apr. 3, 2009).  The rights of individuals who are
13  detained for treatment, not punishment, must be carefully balanced against the state's interests in
14  institutional security and the safety of those housed at the facility, *see, e.g., Youngberg*, 457 U.S.
15  at 319-22, as well as the initial premise for civil detention of SVPs -- the safety of the general
16  public.  The purposes described by Plaintiff, on their face, are reasonable.

17  Plaintiff also alleges that SVPs are not periodically assessed to ensure they are classified
18  according to their "actual identifiable safety and security risks" to ascertain whether an individual
19  has the ability and desire to engage in any of the three types of activities that give rise to safety
20  and security concerns if they were given access to the internet and/or the prohibited electronic
21  devices.  (*Id.*, p. 6.)  Plaintiff further alleges that "there is no evidence" to suggest that he would
22  engage in any of the acts that would raise safety and security concerns such that it is irrational and
23  excessive for him to be prohibited from accessing the internet and/or possessing any of the
24  restricted electronic devices based on the proclivity of other SVPs to engage in the above
25  activities that raise safety and security concerns.  (*Id.*, pp. 6-7.)  However, the fact that the court
26  has ordered Plaintiff's ongoing confinement at CSH as a sexually violent predator demonstrates

---

27  ¹ The Court is aware that other litigants have made a prima facie showing that § 4350 is punitive in nature based upon
the manner in which it was executed.  *Allen v. Mayberg*, 577 Fed.Appx 728 (9th Cir. 2014).  However, as noted
28  above, that is not the contention here.

he *does* continue to pose a risk to others and is likely to "engage in sexually violent criminal behavior." Thus, Plaintiff's assertion that CSH official must prove he is not likely to use the internet for mischief contradict this most basic premise of his confinement.

Plaintiff also alleges that the safety and security concerns which §§ 891 and 4350 address can be remedied via less restrictive means such as WiFi firewalls, WiFi filtration systems, internet filtration systems, and internet monitoring systems. (*Id.*, p. 3.) However, such suggested alternatives are of no import where, as here, the non-punitive purpose of §§ 891 and 4350 are not excessive in relation to their non-punitive purpose. *Jones*, 393 F.3d at 932. Moreover, as noted above, hospital officials are not obligated to provide the least restrictive means for accomplishing the legitimate goal. *Valdez.* 302 F.3d at 1046.

No court has found that prisoners have a constitutional right to possess personal computers, or items that are similar to personal computers, in their cells. *See Endsley v. Luna*, 2008 WL 3890382 at *3 (C.D.Cal. May 23, 2008) (unpub.) (citing *Sands v. Lewis*, 886 F.2d 1166, 1172 (9th Cir.1989) (prisoners do not have a constitutional right to have memory typewriters in cells), overruled on other grounds by *Lewis v. Casey*, 518 U.S. 343, 350-55 (1996); *Taylor v. Coughlin*, 29 F.3d 39, 40 (2nd Cir.1994) ("If prison inmates do not enjoy a constitutional right to typewriters as implements of access to the courts, it would be illogical for us to rule that there is a constitutional right to typewriters of a specific memory capacity."); *State ex rel. Anstey v. Davis*, 203 W.Va. 538, 545, 509 S.E.2d 579 (1998) ("We are persuaded by the uniformity of opinion on this issue and therefore hold that prison inmates have no constitutional right to possess personal computers in their cells."); *Endsley v. Luna*, 2009 WL 3806266 (C.D.Cal. Nov.12, 2009) (unpub.) at * 16 (citing *Fogle v. Blake*, 227 Fed. Appx. 542, 542 (8th Cir.2007) (finding civil committee failed to state a constitutional claim regarding denial of a computer or typewriter); *Spicer v. Richards*, 2008 WL 3540182 at *7 (W.D.Wash. Aug.11, 2008) (unpub.) (finding no authority to show that SVP had a 14th Amendment right to possess a "cell phone, pager, computer, [or] color ink cartridge printer."); *Carmony v. County of Sacramento,* 2008 WL 435343 at *18 (E.D.Cal. Feb.14, 2008) (finding civil detainee had no "free-standing First Amendment right to access computers and/or the internet."); *White v. Monahan*, 2009 WL

499121 at *2 (C.D. Ill. Feb 24, 2009) (acknowledging that while civil detainees enjoy more liberties than convicted prisoners, "[t]he inability to possess a computer does not implicate a property interest that might be protected by procedural due process protections or an interest that might be classified as a substantive due process interest.").

Thus, Plaintiff is unable to demonstrate that he has a constitutionally protected interest in possessing any of the electronic devices prohibited by § 4350, let alone access to the internet[2] prohibited by § 891, and so is unable to state a cognizable claim due process claim. *See Hewitt*, 794 F.2d at 1380.

### C. Plaintiff has not stated a First Amendment claim

Though Plaintiff does not specify which aspect of his rights under the First Amendment have been violated, it appears that he feels the litany detailed above shows a violation of his right to free speech and/or association. However, while all of the issues he raises above would undoubtedly be easier and quicker via the internet, he provides no factual allegations to assert that his lawful communication/speech is not allowed via other means.

Notably, the Constitution is not concerned with *de minimis* restrictions on SVPs' liberties, *see Youngberg,* 457 U.S.at 320. Indeed,

> [t]he very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). And, as our cases have established, freedom of association is among the rights least compatible with incarceration. See Jones, supra, at 125–126, 97 S.Ct. 2532; *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Though Plaintiff is not a prisoner, the need to keep him separated from others is no less important in light of the goals of the SVPA; perhaps the need is more important.

---

[2] Moreover, rather than asserting that the regulations *interfere* with his right to use the Internet, he asserts an affirmative duty on hospital officials to *provide* an Internet connection. Clearly, though a detainee is entitled to certain necessities of life, the ability to surf the web or the ease with which the Internet provides access to information is not a necessity of life.

Plaintiff also alleges that patients are required in their treatment "to continuously edit and re-edit their voluminous (often hundreds of pages) worth of process notes" which these two statues inhibit so as to result in a denial of realistic opportunity to complete their treatment program. (*Id.*, p. 4.) It is noteworthy that Plaintiff does not allege that there are *no* computers whatsoever available for patients' use at CSH; rather under his allegations, Plaintiff feels that SVPs should be allowed to have their own computers for use editing their process notes. This is another *de minimis* restriction on Plaintiff's liberty which is likewise not actionable.

**ORDER**

Based on the foregoing, the Court **ORDERS** that this action is **DISMISSED** with prejudice.

IT IS SO ORDERED.

Dated: __May 19, 2016__                    __/s/ Jennifer L. Thurston__
                                                                UNITED STATES MAGISTRATE JUDGE